ANNA R. ENGELDINGER, TRUSTEE FOR
THE HEIRS AND NEXT OF KIN OF NICHOLAS F.
ENGELDINGER, AND ANOTHER v. STATE
AUTOMOBILE AND CASUALTY UNDERWRITERS.

236 N. W. 2d 596.

November 14, 1975—No. 45261.

*Hoppe & Healy* and *Robert J. Healy,* for appellant.

*Rischmiller & Wasche* and *John E. Wasche,* for respondents.

Heard before Sheran, C. J., and Peterson, Kelly, Yetka, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This appeal arises from an action in the Hennepin County District Court against defendant insurer for satisfaction of a judgment entered against an insured pursuant to settlement of a wrongful death action commenced by the widow of Nicholas F. Engeldinger against Merle E. Ferry. Upon a stipulation of confession of judgment signed by Ferry, the trial court ordered judgment in favor of plaintiff in the amount of $28,500 plus costs and disbursements.

In the instant action, commenced because of Ferry's failure to satisfy the judgment, defendant insurer and plaintiff, Engeldinger's widow, both moved for summary judgment and the court granted plaintiff's motion, ordering entry of judgment in the sum of $28,500 together with costs and disbursements. Defendant appeals from the judgment. We affirm in part and reverse in part.

On January 31, 1970, Merle E. Ferry carried Engeldinger, who was intoxicated and unconscious, from a Minneapolis bar to the former's automobile with the stated purpose of driving him home. Instead, Ferry drove to Duffy's tavern in Minneapolis and left Engeldinger unattended and unconscious in his automobile. After consuming another drink, Ferry, while returning to the automobile, fell and broke his leg. He was hospitalized; Engeldinger remained in Ferry's car during temperatures of 20° Fahrenheit and died that night from a combination of the effects of the exposure to the elements and Ferry's failure to exercise reasonable care for decedent's safety.

When the wrongful death action was commenced against

Ferry, he tendered the defense of the action to defendant, State Automobile and Casualty Underwriters, which had issued a homeowner's policy to Ferry's mother, Mrs. Lottie Ferry. State Automobile denied coverage under the policy and refused to defend. At the trial, a verdict was returned in favor of the plaintiff in the amount of $2,500, and upon plaintiff's motion a new trial was granted upon all issues. On November 30, 1973, pursuant to the stipulation executed by Ferry, the district court ordered entry of judgment in favor of plaintiff in the amount of $28,500 plus costs and disbursements.

The subject policy was issued to Lottie Ferry as the named insured. Merle Ferry was the son of the named insured and was living with her at the time of the accident. The policy was a standard homeowner's policy providing coverage for personal liability for bodily injury and property damage coverage with limits of $25,000 for each occurrence. The policy provides, in portions relevant to this action, as follows:

Section II, Coverage E—Personal Liability, provided:

"This Company agrees to pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient."

The definition of "insured" in the policy under the General Conditions provides:

"a. 'Insured' means

"(1)  the Named Insured stated in the Declarations of this policy;

"(2)  if residents of the Named Insured's household, his

spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured * * *."

Additional definitions included the following:

" '[O]ccurrence': means an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage."

" '[B]odily injury': means bodily injury, sickness or disease, including care, loss of services and death resulting therefrom."

The policy had an exclusion under Coverage E:

"a. to bodily injury * * * arising out of the ownership, maintenance, operation, use, loading or unloading of
* * * * *
"(2) any motor vehicle owned or operated by * * * any insured * * *."

It also provided:

"With respect to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, recreational motor vehicle or watercraft to which this policy applies, this insurance under Coverage E—Personal Liability shall be excess insurance over any other valid and collectible insurance available to the Insured."

This action commenced by decedent's widow, after a writ of execution was returned unsatisfied, is authorized by Minn. St. 60A.08, subd. 6, which provides:

"Every bond or policy of insurance issued in this state insuring against either actual loss suffered by the insured, and imposed by law for damages on account of personal injury, death, or injury to property caused by accident, or legal liability imposed upon the insured by reason of such injuries or death, shall, notwithstanding anything in the policy to the contrary, be deemed to contain the following condition:

"The bankruptcy or insolvency of the insured shall not relieve

the insurer of any of its obligations under this policy, and in case an execution against the insured on a final judgment is returned unsatisfied, then such judgment creditor shall have a right of action on this policy against the company to the same extent that the insured would have, had the insured paid the final judgment."

## I.

The main issue to be considered is whether the death falls within defendant insurer's exclusionary clause, which excludes liability coverage for bodily injury or death "arising out of the ownership, maintenance, operation, use, loading or unloading" of the motor vehicle.

Plaintiff initially relies on language of State Farm Mutual Ins. Co. v. Partridge, 10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 P. 2d 123 (1973), to support her theory that courts will strictly construe exclusionary clauses, while broadly interpreting coverage clauses, to accomplish the purpose of affording the "greatest possible protection to the insured" and applying the fundamental principle of resolving ambiguities against the insurer. The court concluded in that case (10 Cal. 3d 102, 109 Cal. Rptr. 816, 514 P. 2d 128):

"In view of the above approach the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy. * * * As one commentator has recently observed: 'It is clear that the expression "use of an automobile" has different meanings under different circumstances and that, whenever possible, the courts will apply an interpretation which gives, but never takes away, coverage for the "use" of an automobile, thereby causing automobile and non-automobile liability policies to overlap, notwithstanding the exclusion against the "use" of an automobile in most non-

automobile liability policies.' (Marcus, Overlapping Liability Insurance (1967) 16 Def. L. J. 549, 559.)

"Although liability under the homeowner's policy could possibly be predicated upon the ambiguity of the exclusionary clause in the context of the instant accident, we need not rely upon this ground. The basis for such liability in this case is far stronger. Here the 'use' of Partridge's car was not the sole cause of Vanida's injuries but was only one of two joint causes of the accident. *Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants correctly contend that when two such risks constitute concurrent proximate causes of an accident; the insurer is liable so long as one of the causes is covered by the policy.*" (Italics supplied.)

Defendant contends that the existence of a causal relationship between the death and use of the automobile invokes the exclusionary clause of the homeowner's policy to relieve it of any liability. It states that the exclusion does not only apply to the operation of, but also to the use of, the automobile, and that there is no question that the automobile was being used at the time to transport the decedent.

An examination of the voluminous authority discussing the phrase "arising out of the use of an automobile," as well as the actual or necessary causal connection between this use and the accident leads to the ultimate conclusion that each court will determine coverage and liability upon the particular facts presented. See, Tucker v. State Farm Mutual Auto. Ins. Co. 154 So. 2d 226 (La. App. 1963), in which the court held that an automobile was not being "used" by a child who disengaged the gears, causing the automobile to roll into the insured, who was attempt-

ing to stop it; Azar v. Employers Cas. Co. 178 Colo. 58, 495 P. 2d 554 (1972), and Brenner v. Aetna Ins. Co. 8 Ariz. App. 272, 445 P. 2d 474 (1968), where both courts held that there was no causal connection between the use of the automobile and the injury where a gun went off and accidentally injured a passenger riding in a car. In Brenner the court concluded that the homeowner's and not the automobile policy covered the occurrence. For contrary results, see Morari v. Atlantic Mutual Fire Ins. Co. 105 Ariz. 537, 468 P. 2d 564 (1970); Allstate Ins. Co. v. Truck Ins. Exchange, 63 Wis. 2d 148, 216 N. W. 2d 205 (1974); Wyoming Farm Bureau Mutual Ins. Co. v. State Farm Mutual Auto. Ins. Co. 467 F. 2d 990 (10 Cir. 1972).

An analysis of the facts in the instant case leads to the conclusion that the death did not arise out of the "use" of the automobile, but rather that the automobile was a mere instrument, receptacle, or situs of the primary negligence of the insured. In National Farmers Union Property & Cas. Co. v. Gibbons, 338 F. Supp. 430 (D. N. D. 1972), the court construed "use" to mean use as a vehicle, not as a gun rest, where a passenger in a stopped automobile was injured by a bullet fired from a gun resting on top of the automobile. Applying that theory to the facts before us, certainly the use of the automobile as an overnight resting place for the decedent is not the use of it as a vehicle. As stated by plaintiff, the decedent might easily have been assisted to his front porch under the same circumstances, with death resulting from the same causes. We therefore feel that the summary judgment entered in favor of plaintiff was a proper determination of this issue. There is no dispute as to the facts, and the issue is therefore one of law—the interpretation of the language of an insurance contract. Associated Independent Dealers, Inc. v. Mutual Serv. Ins. Companies, 304 Minn. 179, 229 N. W. 2d 516 (1975).

## II.

The second issue facing this court concerns the insurer's duty to defend.

This court undertook a rather persuasive and determinative discussion of the duty to defend in the recent case of Republic Vanguard Ins. Co. v. Buehl, 295 Minn. 327, 204 N. W. 2d 426 (1973). In that case, the defendant appealed from a summary declaratory judgment in favor of the plaintiff insurer which had determined that the provisions of a homeowner's policy did not obligate the company to defend an action for personal-injury damages sustained by the defendant when she was struck by a motorcycle operated by the insureds' minor son. This court reversed that determination, relying upon allegations of parental negligence in the complaint in the personal injury action. In citing and quoting the case of McDonald v. Home Ins. Co. 97 N. J. Super. 501, 235 A. 2d 480 (1967), this court stated (295 Minn. 331, 204 N. W. 2d 429):

"* * * We agree with the appellate court's reversal of the summary judgment and note with approval its discussion concerning the nature of the alleged cause of action (97 N. J. Super. 503, 235 A. 2d 482):

" 'We hold that Home was obliged to defend the McDonalds against the Dorman action. The *action* against the McDonalds was not based upon "the ownership, maintenance, operation, use, loading or unloading of * * * automobiles * * *" even though the immediate cause of the *injury* and death of Dorman, Jr. was Mickey's operation of the automobile. *The action was based upon their alleged negligence in failing to supervise and control their child, knowing of his violent and dangerous* habits.' (Italics supplied in part.)"

Under the evidence before us, it is clearly established that the decedent was exposed to the elements while occupying the rear seat of insured's automobile. He was placed there and left unattended through the negligence of insured in failing to exercise reasonable care for him. The complaint in the instant action alleges as follows:

"That said action was one for death by wrongful act occurring

on or about January 31, 1970, and based upon one Merle E. Ferry's failure to exercise reasonable care toward one, Nicholas F. Engeldinger."

Doubtless, this complaint is not framed in terms of a cause of action or risk excluded by the subject insurance policy but rather in terms of negligence.

The complaint in the initial wrongful death action was framed in the following terms:

### "III.

"That at approximately 11:30 o'clock P.M. on said date at said place, Defendant parked his automobile negligently leaving the deceased asleep or unconscious in the back seat of said vehicle.

### "IV.

"That the negligent conduct of Defendant, as above set forth, resulted in the death of said Nicholas F. Engeldinger on or about February 1, 1970."

There are no facts or allegations that Ferry parked the automobile in a negligent manner, e. g., leaving it in the middle of the street or in a dangerous area. Rather, the allegation focuses upon the negligent act of the defendant in leaving the decedent as indicated by the facts. Therefore, this complaint was not framed in terms of a cause of action or a risk excluded by the insurance policy, and the insurer should have undertaken the defense upon tender by the insured.

### III.

The remaining issue can be stated as follows: Must the insurer be liable for the entire amount of the settlement, which exceeds the maximum limits of the policy, when the insurer failed to defend the action on the basis that the policy did not afford such coverage?

Coupled with this is the question of whether plaintiff must prove that the settlement was made in good faith in order to bind the insurer. Republic Vanguard Ins. Co. v. Buehl, *supra*, is con-

clusive of the determination that the insurer had an obligation to defend.

Further, there is additional support for this conclusion upon a reading of the policy provision, Section II—Coverage E, of the homeowner's policy, which defines the insurer's obligation to defend as set forth above. This court construed similar language in Butler Bros. v. American Fidelity Co. 120 Minn. 157, 169, 139 N. W. 355, 360 (1913), as follows:

"* * * But where the insurer has agreed to settle or defend all claims within the policy, 'even if groundless,' and has refused to do either, thus breaching its contract, and compelling the insured to defend the action, we hold that the insured may in good faith make a settlement of the action, and may recover the amount paid on such settlement of the insurer, unless it is made to appear affirmatively that there could have been no recovery had the action been tried. * * *

* * * * *

"Within the rule we have here laid down, that *in order to defeat the action the burden of proof is upon defendant to show that there could have been no recovery in the action settled,* we hold that the record before us does not show this." (Italics supplied.)

The court did not mention the burden of good-faith settlement.

As in Butler, the record does not disclose that there was ever a challenge to the settlement, either in that the amount was excessive or that the settlement itself was not proper. However, the lower court, in its memorandum, specifically referred to substantial authority for the conclusion that a breach of contract by the insurer in failing to defend, even through an honest mistake, renders it liable for the amount of the judgment. Butler Bros. v. American Fidelity Co. *supra*; Hansen v. Globe Ind. Co. 127 F. Supp. 260 (D. Minn. 1954).

This court, in Mannheimer Bros. v. Kansas Cas. & Surety Co. 149 Minn. 482, 184 N. W. 189 (1921), held that, where the

amount of the judgment exceeds policy limits, the insurer is not liable for more than the maximum policy coverage. Plaintiff would have this court adopt the reasoning of Comunale v. Traders & Gen. Ins. Co. 50 Cal. 2d 654, 328 P. 2d 198 (1958), where the court concluded that an insurer which denies coverage does so at its own risk, and although its denial may not have been entirely groundless, if found wrongful it must bear the full amount of the insured's financial detriment. Therefore, the result sought by plaintiff is that the insurer is liable for the full amount of the settlement, $28,500, plus costs and interest.

To conclude, as did the lower court, that the insurer is liable for the entire settlement, plus costs and interest, an amount which exceeds policy limits, would require a reversal of the Mannheimer case. It is not clear, given the fact here that the refusal to defend was based upon the existence of an exclusionary clause, that a reversal of Mannheimer is warranted at this time. The only attempted offer to settle by decedent's widow within the policy limits is of limited persuasiveness in that it was conveyed after the November 30, 1973, judgment date. Conceivably, there exist situations where the insurer must bear the entire financial settlement, even in excess of policy limits, when it fails to defend. However, there is some degree of uncertainty as to whether this is one of those cases.

We therefore reaffirm our holding in Mannheimer Bros. v. Kansas Cas. & Surety Co. *supra,* and reverse the trial court only on the question of damages, limiting such damages to the policy limits plus interest and costs including the reasonable cost of legal services employed to defend the action, as spelled out in Mannheimer.

Affirmed in part, and reversed as to damages only.

TODD, JUSTICE (dissenting).

I dissent from that part of the majority opinion reducing defendant's liability to the policy limits. The majority sustains the trial court's findings that the defendant acted improperly in re-

fusing to undertake the tendered defense of its insured. I would, based upon the factual distinctions of record here, hold defendant responsible for the full amount of the damages by virtue of its refusal to defend and the resulting exposure of the insured to possible legal proceedings to recover the excess of the judgment over the policy limits.

At the outset, it is noteworthy that the amount of the settlement has never been challenged by the insurer. The burden of raising this issue is on defendant insurer and since it failed to do so we should conclude as a matter of law that the settlement is reasonable. Butler Bros. v. American Fidelity Co. 120 Minn. 157, 139 N. W. 355 (1913).

The majority opinion is premised on our holding in Mannheimer Bros. v. Kansas Cas. & Surety Co. 149 Minn. 482, 184 N. W. 189 (1921). The California court in Comunale v. Traders & Gen. Ins. Co. 50 Cal. 2d 654, 659, 328 P. 2d 198, 201 (1958), in commenting on our Mannheimer case, said:

"The decisive factor in fixing the extent of Traders' liability is not the refusal to defend; it is the refusal to accept an offer of settlement within the policy limits. Where there is no opportunity to compromise the claim and the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs. (*Mannheimer Bros. v. Kansas Casualty & Surety Co.* 149 Minn. 482 [184 N. W. 189, 191].) In such a case it is reasoned that, if the insured has employed competent counsel to represent him, there is no ground for concluding that the judgment would have been for a lesser sum had the defense been conducted by insurer's counsel, and therefore it cannot be said that the detriment suffered by the insured as the result of a judgment in excess of the policy limits was proximately caused by the insurer's refusal to defend. (*Cf. Lane v. Storke,* 10 Cal. App. 347, 350 [101 P. 937].) *This reasoning, however, does not apply where*

*the insurer wrongfully refuses to accept a reasonable settlement within the policy limits."* (Italics supplied.)

I am in accord with the last sentence quoted above and would so limit our holding in Mannheimer.

The California court also said (50 Cal. 2d 660, 328 P. 2d 201):

"Most of the cases dealing with the insurer's failure to settle involve an insurer who had assumed the defense of the action against the insured. It is generally held that since the insurer has reserved control over the litigation and settlement it is liable for the entire amount of a judgment against the insured, including any portion in excess of the policy limits, if in the exercise of such control it is guilty of bad faith in refusing a settlement. (*Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 682 [319 P. 2d 69]; *Ivy v. Pacific Automobile Ins. Co.*, 156 Cal. App. 2d 652, 659 [320 P. 2d 140]; see anno., Duty of Liability Insurer to Settle or Compromise, 40 A. L. R. 2d 168, 178; Roos, *A Note on the Excess Problem*, 26 Cal. State Bar J. 355, 356.) Those cases are, of course, factually distinguishable from the present one since Traders never assumed control over the defense. However, the reason Traders was not in control of the litigation is that it wrongfully refused to defend Sloan, and the breach of its express obligation to defend did not release it from its implied duty to consider Sloan's interest in the settlement."

In the case of Seward v. State Farm Mutual Auto. Ins. Co. 392 F. 2d 723, 727 (5 Cir. 1968), the court said:

"* * * There is certainly a greater likelihood of a settlement if an insurance company is in a case than if the company is out of it. Moreover, there are alternatives to an insurer's abandonment of an insured: a declaratory judgment action or defense of the suit with reservation of its right to deny coverage. In a sense, a judgment for the face amount of the policy rewards the insurer for its misconduct: such a judgment definitely limits its liability to the face of the policy and, at the least, saves attorney's fees."

Our court in Crum v. Anchor Cas. Co. 264 Minn. 378, 392, 119 N. W. 2d 703, 712 (1963), stated the rule to be applied in this situation, there saying:

"It must be kept in mind that in situations of this kind the insured who is sued has no control over the allegations of the complaint. We think the better rule is that, if the insurer is advised by the insured what he claims the facts to be or the insurer by an independent investigation ascertains that the facts are in conflict with the complaint and, if established, will present a potential liability on the part of the insured covered by the insurance contract, the insurer is obligated to undertake the defense. That rule does not prevent the insurer from seeking an independent determination of its liability to defend in an appropriate proceeding between the insurer and the insured."

The majority opinion holds that defendant was obligated to defend in this case. In evaluating whether its determination not to defend was made in bad faith, I would add to the matters being considered the obvious value of having the insurer in the case from the beginning. The presence of a funded source is of enormous impact in any litigation and the denial of this leverage works to the substantial detriment of the insured.

Further, I fail to see any distinction where an insured undertakes a defense and wrongfully refuses an offer of settlement within the policy limits and the situation we have here. Plaintiff is proceeding under a statutory right, Minn. St. 60A.08, subd. 6, quoted in the majority opinion. There has been no assignment of rights by the insured. Consequently, there has not been the usual delivery of a covenant not to levy in exchange for the assignment of the insured's rights to plaintiff. The effect of the majority decision is a partial satisfaction of the judgment, leaving the insured exposed to claims for the balance. Following judgment, defendant decided to appeal without advising the insured. In addition, plaintiff offered to settle within policy limits,

together with interest, after the judgment was entered, but this offer was never communicated to the insured.

The fact that there exists an unsatisfied levy against the insured is immaterial. In Lange v. Fidelity & Cas. Co. 290 Minn. 61, 66, 185 N. W. 2d 881, 885 (1971), we said:

"* * * A judgment-proof insured suffers injury from a judgment against him in excess of policy limits because such a judgment will potentially impair his credit, place a cloud on the title to his exempt estate, impair his ability to successfully apply for loans, and may eventually require him to go through bankruptcy. Further, if the rule were that a judgment-proof insured suffers no injury from an excess judgment, an insurer's responsiveness to its well-established duty to give equal consideration to an insolvent insured's interests would tend to become meaningless."

We further said (290 Minn. 68, 185 N. W. 2d 886):

"This obligation of counsel retained by the insurer is not fulfilled merely by an explanation which amounts to no more than assurances to the insured that his interests are being zealously and faithfully protected by experienced counsel, but rather by laying bare the truth—not only of the potential consequences of a deficiency judgment but of the potential conflict between the interests of the carrier and the insured—in the manner in which the insured would be advised if he consulted private counsel."

Considering defendant's refusal to defend initially, the insured's lack of financial leverage during the initial trial, the failure of the insurer to seek declaratory relief, the questionable validity of its original denial, the offer of settlement within the policy limits, the failure to communicate the offer of settlement to the insured, the exposure of the insured to an excess judgment, and the failure to settle in a situation where the insurer placed its own interest above that of the insured, I would find bad faith as a matter of law and hold defendant responsible for the full

amount of the judgment, which is reasonable in amount as a matter of law.