Carrie L. **TLOUGAN, an infant, by
Michael D. Klampe, her guardian
ad litem, Respondent,**

v.

**AUTO–OWNERS INSURANCE
COMPANY, Appellant.**

No. 51348.

Supreme Court of Minnesota.

Sept. 18, 1981.

Rehearing Denied Dec. 8, 1981.

James A. Reding, St. Paul, for appellant.

Steward, Perry & Mahler and M. John Steward, Rochester, Eric J. Magnuson, Minneapolis, for respondent.

SIMONETT, Justice.

Respondent Carrie L. Tlougan, a 5-year-old child who sustained burn injuries while playing with matches in a truck, brought suit for her injuries against her parents' automobile insurer, Auto-Owners Insurance Company, and homeowners' insurer, Great Central Insurance Company. The trial court found that Carrie Tlougan's injuries were covered by the no-fault insurance policy and not by the homeowners' policy. Auto-Owners appeals from the judgment. Since we find the injuries did not arise out of the use or maintenance of a motor vehicle, we reverse.

Betty Tlougan, Carrie's mother, was planning to take her children to downtown Plainview on the morning of July 10, 1978, to participate in a "Crazy Days" celebration. Carrie was dressed in an Indian costume made from a gunny sack. The father had left a book of matches on the dashboard of the family pickup truck the previous day. The matches had been given to him by his wife because the truck's cigarette lighter was not in working order.

Mrs. Tlougan told her two children to sit in the truck and wait for her while she cleared dishes from the breakfast table. Carrie found the matches while sitting in the cab of the truck. She lit one of them and it ignited her costume. The truck's motor was not running and Mrs. Tlougan was still inside the house at the time of the accident.

As a result of the accident, Carrie Tlougan suffered third-degree burns on 40% of her body. Her medical expenses to time of trial were $20,714, and her doctor testified additional surgery would be required in the future.

Minnesota's no-fault statute states that basic economic loss benefits "shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (1980). The issue here is whether Carrie's injuries arose "out of the mainte-

nance or use of a motor vehicle." This phrase is further defined by the statute as "maintenance or use of a motor vehicle *as a vehicle*, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it." Minn.Stat. § 65B.43, subd. 3 (1980) (emphasis added).

This court has long recognized there must be some connection between the injury and the use of the vehicle for transportation purposes. *See, e. g., Holm v. Mutual Service Casualty Ins. Co.*, 261 N.W.2d 598, 603 (Minn.1977); *Engeldinger v. State Automobile & Casualty Underwriters*, 306 Minn. 202, 208, 236 N.W.2d 596, 600 (1975); *Associated Independent Dealers, Inc. v. Mutual Service Ins. Cos.*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975). In these three cases we denied auto insurance coverage since the injuries did not relate to use of the vehicle for transportation purposes. In *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648 (Minn.1979), however, we found the connection sufficient to afford coverage.

In this case, the plaintiff was using the pickup truck for transportation purposes at the time of the accident. She was occupying the pickup, as a passenger, preparatory to a trip into town. We conclude, however, that coverage is not established since there is an insufficient causal connection between use of the vehicle for transportation purposes and the injury.

This "connection" between use and injury is something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury. It is enough if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." *Haagenson*, 277 N.W.2d at 652; *National Family Ins. Co. v. Boyer*, 269 N.W.2d 10, 15 (Minn.1978). In *Holm*, 261 N.W.2d at 603, we quoted with approval the requirement of the Mississippi Supreme Court that "the vehicle itself must be an *active* accessory" to the injury sustained. *See National Mutual Casualty Co. v. Clark*, 193 Miss. 27, 40, 7 So.2d 800, 805 (1942) (emphasis in the original).

Here, in our opinion, it cannot be said the pickup truck was an "active accessory" of the injury. The cab of the truck was no more than the situs of the match-playing incident. The incident is analogous to that in *Boyer* where we held that the shooting of a pistol by a person in the front seat of a car which resulted in injury to a passenger entering the back seat of the car was not an incident arising out of the use of a motor vehicle. We said there the vehicle was no more than the situs of the injury.

Respondent relies, as did the trial court, on *Haagenson*. There we found coverage for a passenger who was electrocuted when he slipped while opening the door of a pickup truck and came in contact with a live wire. In *Haagenson*, however, the pickup truck was an active accessory of the injury. A car had left the road, knocking down a powerline pole. A pickup, in which plaintiff was a passenger, came to the rescue and was parked on the side of the road near the disabled car. We pointed out the pickup was parked next to the ditch with the downed powerlines only 6 to 12 feet from the passenger's side of the truck and with the lowest powerline 3 to 4 feet above the ground; that the ditch sloped down from a narrow 1-foot shoulder; that dew or frost had formed on the grassy slope; and that it was nighttime. *Id.*, 277 N.W.2d at 650. In other words, the circumstances in *Haagenson* were such that the positioning of the vehicle created a hazardous situation for the passenger which contributed to his injury.

Nor do we think the fact the child was playing with a book of matches left in the pickup from the day before establishes any causal connection between the child's injuries and the use of the truck for transportation purposes. While the matches had been brought into the pickup because the cigarette lighter did not work, this would not make the matches, a common-use item, part of the pickup's equipment nor something that involved the vehicle when used for transportation purposes.

We therefore reverse the judgment against the no-fault insurer. Since we hold

the injury did not arise out of the maintenance or use of a motor vehicle, the injury is removed from the exclusion of the homeowners' policy contrary to the determination of the trial court.

Reversed.