Eldon **WALDBILLIG**, Respondent,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

**No. 81–780.**

Supreme Court of Minnesota.

July 2, 1982.

**50**

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and Kenneth W. Dodge, Minneapolis, for appellant.

Horvei & Krueger and John J. Horvei, Shoreview, for respondent.

KELLEY, Justice.

State Farm Mutual Automobile Insurance Company (State Farm) appeals from an order granting respondent Eldon Waldbillig's motion for amended Findings of Fact, Conclusions of Law and Order for Judgment and denying appellant's motion requesting the same relief and from the judgment thereafter entered. The judgment granted respondent recovery for wage loss and medical expenses incurred by him as a result of an injury which occurred while he owned automobile insurance policies providing "no-fault" coverage issued by the appellant. We reverse.

Respondent Waldbillig, now 72 years of age, had a work history of farming, factory work and work as a meatcutter. For approximately 30 years, he worked as a woodsman in the logging industry in northern Minnesota and was self-employed in that capacity during the 15 years prior to his injury. On April 28, 1977, respondent had come to the Twin Cities metropolitan area to examine a Chevrolet tandem truck with a Shield Bantam backhoe mounted on

it. Respondent planned to purchase the tandem unit, if satisfactory, for use in his logging business. The backhoe was permanently mounted on the bed of the truck, but operation of the backhoe itself was totally independent from the operation of the truck. The truck and the backhoe had separate engines, separate electrical systems and separate operational controls. The backhoe could not be started or operated from the cab of the truck, nor could the truck be operated from the separate cab of the backhoe.

Upon arrival at the site where the tandem unit was located, respondent attempted first to start the truck engine from the truck cab but was unable to do so. Respondent then climbed into the cab of the backhoe mounted on the rear of the tandem and attempted to start the backhoe engine, but it would not start either. Apparently, the starter button on the backhoe engine was, as respondent put it, "haywire." After the owner or the owner's agent connected jumper cables from a pick-up truck to the backhoe battery, respondent attempted to start the backhoe engine by shorting across the solenoid. The backhoe engine eventually started, but upon ignition it revved up to a high speed indicating that the governor was stuck. Respondent immediately turned off the backhoe engine and made adjustments on the governor. The backhoe motor was restarted and was running normally when suddenly it again "started running away" while respondent had his hand on the governor. His hand was "sucked" into the backhoe motor fan, and he sustained injuries to the fingers of his right hand which required two of them to be amputated. The amputation of the two fingers on respondent's dominant hand resulted in 70% impairment of the total functioning capacity of both hands combined.

Following the accident, respondent was no longer able to continue his occupation as a woodsman, and it was physically impossible for him to engage in any occupation which required him to operate or handle tools or equipment requiring the use of a full hand grip. After recovering from his

injuries, respondent worked temporarily as a construction site watchman for a highway construction firm. He subsequently commenced this action to recover wage loss and medical benefits under two "no-fault" automobile policies issued by State Farm on vehicles owned by the respondent. The trial court, sitting without a jury, awarded respondent $2,922.29 in medical expenses plus $13,428 in wage loss benefits.

Two issues are raised on appeal. First, is respondent entitled to no-fault benefits resulting from injuries incurred during the inspection of a backhoe which was permanently mounted on a truck chassis but which was operated independently from the operating mechanism of the truck? Second, did the trial court correctly compute respondent's wage loss benefits?

Resolution of the first issue depends upon whether respondent's injury arose out of the maintenance or use of a motor vehicle as a vehicle within the meaning of Minn. Stat. § 65B.43, subd. 3 (1980).[1] Appellant contends that testing or inspection of a backhoe mounted on a truck does not constitute the "use of a motor vehicle as a vehicle." Respondent contends that the truck-backhoe tandem was a motor vehicle and that he was occupying it and using it at the time of the accident. Even if it be assumed that the truck-backhoe tandem is a "motor vehicle" within the meaning of the statute,[2] whether it was being maintained or used as a motor vehicle at the time of the accident is the crucial question. In Commissioner's Comments on § 1(a)(6) of the Uniform Motor Vehicle Accident Repara-

tions Act (1972), the restrictive meaning of the word "use" as it appears in this statute is explained:

> While "use" has a broader meaning than operating or driving a vehicle, the requirement that use of the motor vehicle be *"as a motor vehicle" qualifies the term* so that both the tort exemption and the availability of basic reparation benefits are *more nearly limited to activities whose costs should be allocated to motoring as part of an automobile insurance package.* * * * Other than specifying that injury arise out of maintenance or use "as a vehicle," it has not been possible to define the general concept more specifically, so borderline cases are left to the courts * * *. (emphasis supplied)

Our cases have held that before no-fault benefits can be recovered, the "use" of the motor vehicle must be for transportation purposes. The mere fact that an accident occurred while the injured party was on, in or near a statutorily defined motor vehicle, of itself is not dispositive. Thus, we have held that where workmen were injured while loading and unloading heavy boxes inside a stationary truck, their injuries were not compensable under the statute because they did not arise out of "maintenance or use of a motor vehicle as a vehicle." *Galle v. Excalibur Insurance Co.,* 317 N.W.2d 368 (Minn.1982). We likewise held in *Krupenny v. West Bend Mutual Insurance Co.,* 310 N.W.2d 133 (Minn.1981) that a workman injured when a dumpster on a garbage truck fell could not recover no-fault benefits be-

1. Minn.Stat. § 65B.43, subd. 3 (1980) provides: Subd. 3. "Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle *as a vehicle,* including, incident to its maintenance or use *as a vehicle,* occupying, entering into, and alighting from it. Maintenance or use of a motor vehicle does not include (1) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, or (2) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it. (emphasis supplied)

2. Minn.Stat. § 65B.43, subd. 2 (1980) provides:

Subd. 2. "Motor vehicle" means every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, or (c) is a trailer, when connected to or being towed by a motor vehicle.
Arguably, the vehicle with which we are here concerned is not one required to be registered pursuant to Minn.Stat. § 168.011 *et seq. See* exemptions contained in Minn.Stat. § 168.011, subd. 22 (1980).

cause, at the time of the accident, he was neither "occupying" nor "alighting from" the truck when the dumpster fell. To the contrary, we have held that a person injured when he was entering a motor vehicle intending to become a passenger would be allowed recovery. *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648 (Minn.1979).[3]

Other of our cases have addressed the question of whether recovery is allowable when the injured party is occupying the vehicle. In *National Family Insurance Co. v. Boyer*, 269 N.W.2d 10 (Minn.1978), we held that when a person was injured by the discharge of a pistol within an automobile, the accident did not arise out of the "use" of the automobile.[4] In determining whether an exclusion of coverage for damages "arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle" in a homeowners policy would be applicable, the court held that when an intoxicated person froze to death in an automobile, his death did not "arise out of the use" of the automobile, but rather that the automobile was a mere situs of the primary negligence of the insured. *Engeldinger v. State Automobile and Casualty Underwriters*, 306 Minn. 202, 208, 236 N.W.2d 596, 600 (1975). More recently, in a case where a child was injured while playing with matches in the cab of a pick-up truck, we held in *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116 (Minn.1981) that the accident did not arise out of maintenance or use of a motor vehicle under Minn.Stat. § 65B.44, subd. 1 (1980) and Minn.Stat. § 65B.43, subd. 3 (1980). In so doing, we stated that while the child was occupying the vehicle, her injury was not

related to use of the vehicle for transportation purposes emphasizing that the "connection" between use and injury must be something more than the mere situs of the injury.[5]

The question of whether injuries have arisen under the "arising out of the maintenance or use of the automobile" clause of an automobile liability insurance policy has been addressed by the Wisconsin court in several cases under Wisconsin's "direct action" statute. In *Schmidt v. Luchterhand*, 62 Wis.2d 125, 214 N.W.2d 393 (1974), Luchterhand owned a truck with a crane hoist permanently attached to it. While the truck engine was off and while the crane was in use on a job site hoisting tresses, Schmidt was injured. Although the rig had been driven to the job site, the truck engine had been off for several hours prior to the accident. The Wisconsin court held that even though the truck was a motor vehicle, the accident did not arise out of its use as a motor vehicle, and therefore held that the automobile liability policy did not afford coverage. The owner sued and the insurance company was absolved from responsibility. In so doing, the Wisconsin court relied upon *Smedley v. Milwaukee Automobile Insurance Co.*, 12 Wis.2d 460, 107 N.W.2d 625 (1961), where the injured party sued the owner of a truck on which a crane was permanently mounted. At the time of the accident, the truck was not running and the operation of the crane caused the injury. In holding that the injured person could not sue the insurer of the truck under the direct action statute, the court stated:

> The test under the statute is whether at the time of the accident the unit is being

**3.** These cases all brought into play Minn.Stat. § 65B.43, subd. 3(2) (1980), the "loading and unloading" clause. However, each case emphasized the nexus between the event causing the accident and the use or maintenance of the motor vehicle as a motor vehicle.

**4.** This case did not arise out of a claim under a no-fault policy but is instructive on the requisite nexus between use of the automobile as an automobile and the accident. There was "no relationship between the use of [the] gun * * * and the use of the automobile for *transportation purposes * * *.*" (emphasis supplied) *Na-*

*tional Family Insurance Co. v. Boyer*, 269 N.W.2d 10, 15 (Minn.1978).

**5.** The trial court, in holding that respondent was entitled to no-fault benefits erroneously was under the impression that the respondent had started the truck prior to attempting to start the backhoe engine. *See* Finding of Fact 2. The record is clear and both parties acknowledge in their statement of facts that the truck had never been started in respondent's presence prior to the accident.

used, managed, controlled or operated as a motor vehicle in the ordinary meaning of those words.

*Id.* at 467, 107 N.W.2d at 628. *See also Neumann v. Wisconsin Natural Gas Co.,* 27 Wis.2d 410, 134 N.W.2d 474 (1965) (injury caused by the use of a "Hy-Hoe" excavator mounted on the chassis of a truck); *Norton v. Huisman,* 17 Wis.2d 296, 116 N.W.2d 169 (1962) (a sewer cleaning machine with an independent power supply mounted on the back of a truck chassis).

In each of these cases involving accidents on equipment substantially similar to the truck-backhoe involved in the case at bar, the focus of the Wisconsin court was whether, at the time of the accident, the equipment was being used as a vehicle for transportation purposes so as to trigger Wisconsin's direct action statute, or whether it was being used for purposes other than as a motor vehicle.[6]

We conclude that respondent's injuries were not compensable by his no-fault insurance. Not only does section 65B.43, subd. 3 contain qualifying language evidencing legislative intent to restrict the number of compensable no-fault claims to those arising out of the use of a motor vehicle as a vehicle, but also the legislative purpose of the act as stated in Minn.Stat. § 65B.42 (1980) to provide relief from the detrimental impact of *"automobile accident"* (emphasis supplied) indicates a similar legislative intention.

Because we reverse the trial court's determination that respondent was entitled to benefits under his no-fault insurance policies, it is unnecessary to consider the other issue raised in this appeal.

Reversed.

TODD, Justice (dissenting).

I respectfully dissent. The majority opinion compounds the error established in our prior decision, *Galle v. Excalibur Insurance Co.,* 317 N.W.2d 368 (Minn.1982). We are

introducing the element of causation into the statutory scheme. The only test established by statute is whether or not the vehicle was occupied for a use for which it was designed. That occurred here and coverage under the no-fault statute should apply.

YETKA, Justice (dissenting).

I join in the dissent of Justice Todd.

---

**6.** It is noted that Wisconsin's direct action statute and the insurance policies involved in each of those cases do not contain the restrictive

language found in section 65B.43, subd. 3 of our no-fault statute.