CLASSIFIED INSURANCE
CORPORATION,
Respondent,

v.

Robert A. VODINELICH, individually and as Trustee for the Heirs and Next of Kin of Decedents April Rae Vodinelich and Lance R. Vodinelich, Appellants,

Nancy L. Vodinelich, deceased, by Robert Dolan, Special Administrator of the Estate of Nancy L. Vodinelich, Respondent.

No. C4–84–219.

Court of Appeals of Minnesota.

Aug. 28, 1984.

Robert W. Kettering, Jr., Brian J. Love, Arthur, Chapman & Michaelson, P.A., Minneapolis, for respondent.

James C. Erickson, Peterson, Bell & Converse, St. Paul, for appellants.

Heard, considered, and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal from the trial court's determination in a declaratory judgment action brought by the respondent Classified Insurance Corporation (Classified) that Classified was not obligated to defend or indemnify appellant, the Estate of Nancy Vodinelich (Estate). The action underlying this declaratory judgment suit is one by Robert Vodinelich against the estate for the wrongful deaths of his two children. We reverse.

## FACTS

Nancy Vodinelich committed suicide in August 1978. In the process of taking her own life, she accidentally caused the deaths of her two children. Nancy shut her garage door and turned on the motor of her automobile. Tragically, the door to the house was ajar, and some of the carbon monoxide escaped into the house, killing the children. The family was found several days later.

Robert Vodinelich commenced an action against the Estate of Nancy Vodinelich for damages arising from the wrongful deaths of his children. He maintained an automobile insurance policy with Classified Insurance Company. Under the policy, Classified contracted to pay damages "arising out of the ownership, maintenance or use of a car."

Classified then brought this declaratory judgment action, claiming there was no liability coverage under the policy and Classified had no obligation to defend the estate. The trial court ruled that:

1. Nancy was an insured under the policy.
2. Nancy did not intend to injure her children. The policy exclusion for intentional injuries does not apply.
3. The deaths of the children did not arise out of the ownership, maintenance, or use of a motor vehicle.
4. Classified has no duty to provide coverage on behalf of Nancy's estate against the wrongful death claims brought by Robert.

## ISSUE

Whether the deaths of the Vodinelich children arose "out of the * * * use of a car" as defined in the Classified automobile insurance liability policy.

## ANALYSIS

Language similar to "arising out of the ownership, maintenance or use of a car" in automobile and homeowner's insurance policies has inspired much litigation. "Arising out of" demands a causal connection between the use of the car and the injury. The causal connection required is something less than legal probable cause. "It is enough if 'the injury is a natural and reasonable incident or consequence of the use of the vehicle.'" *Tlougan v. Auto-Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981), (quoting *Haagenson v. Nat'l Farmer's Union Prop. and Cas. Co.*, 277 N.W.2d 648, 652 (Minn.1979)). The car must be more than a mere situs of the accident. It must be an active accessory to the injury. *Holm v. Mut. Serv. Cas. Ins. Co.*, 261 N.W.2d 598 (Minn.1977). Clearly, the Vodinelich car was an active accessory to the injury, and a cause of the deaths.

The No-Fault Insurance Act contains similar language. The act defines "maintenance or use of a vehicle" to require the "use of a motor vehicle, *as a vehicle*."

Minn.Stat. § 65B.43(3) (1982) (emphasis added). This is interpreted to mean the vehicle must be in use for transportation purposes to collect no-fault benefits. *Tlougan v. Auto-Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981).

We must determine whether the requirement that the vehicle be used for transportation purposes applies to liability coverage as well as to no-fault benefits. Respondent argues that it does. The Minnesota Supreme Court has not directly addressed this question, but a review of the cases indicates that the "for transportation" language has crept into cases in which liability insurance is involved. For example, in *Holm v. Mutual Service Cas. Ins. Co.*, 261 N.W.2d 598 (Minn.1977), the court stated "(t)he cases fully support the general proposition that for an injury to 'arise out of the use' of an automobile, it must be causally related to the employment of the vehicle *for transportation purposes." Id.* at 603 (emphasis added). Holm suffered injuries during an arrest, which occurred shortly after he and the officer left their vehicles which were used in the pursuit. In *National Family Ins. Co. v. Boyer*, 269 N.W.2d 10 (Minn.1978), the court concluded that there was no causal relationship between an accidental shooting which occurred while passengers were changing seats in a parked car, and "the use of the automobile for transportation purposes." *Id.* at 15. Both *Holm* and *Boyer* involved interpretation of automobile liability policies and denied coverage.

Likewise, the no-fault language appears in cases in which the policy in question covered homeowner's liability. In *Engeldinger v. State Auto. & Cas. Underwriters*, 306 Minn. 202, 236 N.W.2d 596 (1975), an intoxicated man had been assisted to his car and left overnight in freezing temperatures. The court stated that "certainly the use of the automobile as an overnight resting place for the decedent is not the use of it as a vehicle." *Id.* at 208, 236 N.W.2d at 600.

Finally, cases involving no-fault automobile insurance benefits often cite cases involving liability or homeowner's insurance policies as precedent for requiring that a motor vehicle be used for transportation purposes. *See, e.g. Galle v. Excalibur Ins. Co.*, 317 N.W.2d 368, 370 (Minn.1982); *Tlougan v. Auto-Owner's Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981); *Haagenson v. National Farmer's Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 (Minn.1979); Steenson, *Minnesota No-Fault Automobile Insurance* 31 (1982).

However, review of those liability policy cases in which the "for transportation purposes" language appears reveals that language to have been used to cut an already tenuous causal link. In each of those cases, the insured vehicle was not even in operation.

■ We note that "each case presenting [this] question must, to a great degree, turn on the particular facts presented." *Associated Ind. Dealers v. Mutual Serv. Ins.*, 304 Minn. 179, 181, 229 N.W.2d 516, 518 (1975). In this fact situation, the use of the vehicle, with the inevitable by-product of carbon monoxide, is the direct cause of death of the Vodinelich children. Under the facts here presented, we think the better reasoned rule of law is found in *Lawver v. Boling*, 71 Wis.2d 408, 238 N.W.2d 514 (1976). There the court resolved the question of whether the injury arose out of the use of a vehicle by determining "whether the alleged 'use' is one which is reasonably consistent with the inherent nature of the vehicle." *Lawver* 71 Wis.2d at 416, 238 N.W.2d at 518. *See Boyer*, 269 N.W.2d at 13.

The court's language in *Perry v. State Farm Mut. Ins. Co.*, 506 F.Supp. 130 (D.Minn.1980), is relevant to the case at bar. Norman Perry was in the driver's seat of his inoperable antique car while his sons towed it to their new home. They were stopped by a police officer, who fatally shot Perry as he was alighting from the antique car. In finding coverage under the no-fault provisions of the policy, the *Perry* court stated:

Norman Perry's death arose out of a routine traffic stop * * * [which] would

not have occurred had a vehicle not been in use * * *. Finally, at the time of the accident, the van had its lights on, its motor was still running, and part of the van's body was on the roadway. All of the facts and the circumstances of this case establish that Perry's death was sufficiently related to the use of the van. *Id.* at 132.

Here the claimed "use" is the mechanical operation of the car which produces carbon monoxide. It is so intrinsically a part of the inherent nature of a vehicle that injuries arising from the production of carbon monoxide do, indeed, arise "out of the use of a vehicle" and thus are covered by automobile liability insurance policies using that phrase.

### DECISION

The deaths of the Vodinelich children arose out of the use of an insured vehicle. Classified is obligated to defend and indemnify the Estate of Nancy Vodinelich.

Reversed.