David **HEDLUND**, Appellant,

v.

**MILWAUKEE MUTUAL INSURANCE COMPANY, Respondent.**

**No. C7-85-628.**

Court of Appeals of Minnesota.

Sept. 3, 1985.

Review Denied Oct. 24, 1985.

See also 371 N.W.2d 232.

Ronald R. Frauenshuh, Sr., Paynesville, for appellant.

Willard L. Converse, St. Paul, for respondent.

Heard, considered and decided by NIER-ENGARTEN, P.J., and LANSING and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

David Hedlund was severely injured when he and his father used a truck in jump-starting a tractor left in gear. The trial court granted partial summary judgment in favor of respondent finding as a matter of law that jump-starting is not use of a vehicle for transportation purposes and therefore does not trigger no-fault benefits. In addition, the jury found the position of the truck did not create a hazard making the truck a covered vehicle under the no-fault act. Hedlund appeals from an order denying his motion for a JNOV or, in the alternative, for a new trial. We reverse.

## FACTS

Appellant David Hedlund and his father Louis Hedlund drove a pick-up truck owned by Louis to a field for the purpose of jump-starting a tractor, also owned by Louis, using the truck's battery.

David stood on the ground between the truck and the tractor, to which a fertilizer spreader was attached, and used cables to connect the two batteries. He then depressed the tractor clutch with his hand and with his other hand started the tractor. The tractor's engine turned over, and David started to release the clutch and simultaneously grab one of the cables off of the tractor battery to prevent over-heating. The tractor started moving forward and David tried to depress the clutch. His last memory was falling forward. The fertilizer spreader was dragged over him, causing severe injuries resulting in quadriplegia.

David sued Milwaukee Mutual Insurance Co. for benefits under the truck's no-fault coverage. Milwaukee Mutual argues David's injuries did not arise out of the use of a motor vehicle as defined under the no-fault act because jump-starting is not use of a vehicle for transportation purposes.

The trial court agreed, granting partial summary judgment on that issue. The court submitted to the jury the question of whether the position of the truck created a hazard, thus making the truck a covered vehicle under the no-fault act. The jury was asked "Did plaintiff's injuries arise out of the maintenance or use of his father's truck as a vehicle?" after being instructed that jump-starting is not considered to be use of a vehicle for transportation purposes. The jury found no causal connection.

In addition to the no-fault coverage issues, David alleges prejudice based on these instructions and on disclosure by Milwaukee Mutual's counsel of a separate action by David against his father.

## ISSUE

Did David Hedlund's injuries arise out of the maintenance or use of a motor vehicle within the meaning of the Minnesota No-Fault Act?

## ANALYSIS

### I

Minn.Stat. § 65B.44, subd. 1 (1984) provides:

Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle * * *.

*Id.* The phrase "maintenance or use of a motor vehicle" is partially defined as:

maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. * *

Minn.Stat. § 65B.43, subd. 3 (1984).

▮ For an injury to arise out of the use or maintenance of a motor vehicle, "there must be some causal connection between the injury and the use of the vehicle for transportation purposes." *Waseca Mutual Insurance Co. v. Noska*, 331 N.W.2d 917, 920 (Minn.1983); *see Classified Insurance Corp. v. Vodinelich*, 368 N.W.2d 921 (Minn.1985). The requisite connection between use and injury is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn.1981). The causal connection is met if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648, 652 (Minn.1979). The vehicle itself must be an active accessory to the injury sustained. *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598, 603 (Minn.1977); *see North River Insurance Co. v. Dairyland Insurance Co.*, 346 N.W.2d 109, 114 (Minn.1984). Ownership, maintenance or use clauses do not limit recovery solely to injuries that are caused by direct physical contact with the insured vehicle. *See Progressive Casualty Insurance Co. v. Hoekman*, 359 N.W.2d 685 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. March 21, 1985).

The trial court found that use of the truck to jump-start the tractor was not use of the truck as a vehicle for transportation purposes, but rather was use for "a convenient source of electrical power." The court relied largely on *Plaxco v. United States Fidelity & Guaranty Co.*, 252 S.C. 437, 166 S.E.2d 799 (1969). The issue in *Plaxco* was whether the use by an insured of his automobile battery to crank the engines of his airplane by connecting the batteries with jumper cables constituted a use of an automobile within the meaning of the automobile liability insurance policy providing coverage arising out of the ownership, maintenance or use of any automobile. After the plaintiff disconnected one of the cables from the automobile battery, and while attempting to disconnect the other, the plane's brakes failed allowing the plane to move forward and damage another plane. The court found that the accident did not arise out of the ownership, maintenance or use of an automobile, stating that the power source was "coincidental" only and that "the use of the automobile battery to start the airplane engine * * * had been completed when the airplane moved forward * * *." *Id.* at 441, 166 S.E.2d at 799.

It is clear that the truck was more than the "mere situs" of the injury, and use of the truck did not merely precede the harm. Rather, the truck was "an active accessory to the injury sustained." *Holm*, 261 N.W.2d at 603. The accident would not have occurred "but for" the use of the truck and, therefore, the use of the truck "was a contributing, indeed necessary, cause" of Hedlund's injuries. *See Waseca Mutual*, 331 N.W.2d at 920.

We are reminded by the supreme court that "for coverage to exist, the vehicle must have been used for 'transportation purposes.'" *Vodinelich*, 368 N.W.2d at 923. But, at the same time, the supreme court recognized that "[s]ituations may

arise that our existing language will prove insufficient to meet" and "each case presenting such a question must, to a great degree, turn on the particular facts presented." *Id.* (citations omitted). Such is the case here.

We point out here that the father and son drove the truck to the scene, obviously a use for "transportation purposes" and, with the motor still running,[1] tried to start the tractor. The use of the truck for jump starting purposes was clearly a use which was or should have been contemplated and anticipated by Milwaukee Mutual. It is not unusual, especially in Minnesota, that an automobile might on occasion be used to charge the battery of another vehicle. *Compare McNeill v. Maryland Insurance Guaranty Association,* 48 Md.App. 411, 417, 427 A.2d 1056, 1060 (1981) (injuries sustained when plaintiff's battery exploded when third party lit match after plaintiff had removed battery caps and while the battery was connected by cables to battery of insured automobile arose out of the ownership, maintenance or use of insured automobile). The policy issued by Milwaukee Mutual was intended to insure against risks associated with motoring. *Vodinelich,* 368 N.W.2d at 923.

In *Vodinelich,* the supreme court, in reversing this court, found that a parent who accidently killed her two children while committing suicide by idling the engine of her automobile in a closed garage was not using the vehicle "for transportation purposes." Evidently, the court determined that the parent's intent to use the vehicle as a suicide mechanism was not a risk associated with "motoring." *Id.*. We believe using a vehicle for jump-starting purposes is a risk associated with "motoring".

This use is also consistent with the vehicle's "inherent functional purpose." *See id.* at 924 (Simonett, J., dissenting).

## II

Because we reverse the trial court's determination that Hedlund's injuries did not arise out of the ownership, maintenance or use of a motor vehicle, we need not address the other issues raised in this appeal.

## DECISION

 The injuries sustained by Hedlund when he was attempting to jump-start a tractor by connecting jumper-cables to a battery in a pick-up truck arose out of the "ownership, maintenance or use" of that truck.

Reversed.

---

1. The Minnesota Supreme Court addressed a related question in *Waldbillig v. State Farm Mutual Automobile Insurance Co.,* 321 N.W.2d 49 (Minn.1982). *Waldbillig* involved a backhoe permanently mounted in the bed of a truck with a separate engine, electrical system, and controls. The truck engine was used to jump the backhoe engine because the starter on the backhoe had gone "haywire." The truck engine was not running. The backhoe engine ran normally for awhile and then "started running away" injuring the plaintiff's hand. The court found the injury not compensable under no-fault insurance. *Id.* at 51.

*Waldbillig* is distinguishable from the case at bar. Here, the pick-up was driven out to a field for the purpose of jump-starting the tractor. The pick-up was started prior to attempting to jump the tractor and continued to run at the time of the accident. In *Waldbillig* the truck was not running. *Id.* at 52.