Howard D. HANSON, Appellant,

v.

**GRINNELL MUTUAL REINSURANCE COMPANY, Respondent.**

No. C2-87-2226.

Court of Appeals of Minnesota.

April 19, 1988.

Review Denied June 29, 1988.

David W.H. Jorstad, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for appellant.

Kay Nord Hunt, V. Owen Nelson, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

FORSBERG, Judge.

Appellant Howard D. Hanson brought this declaratory judgment action against respondent Grinnell Mutual Reinsurance Company ("Grinnell") seeking benefits under the terms of an automobile insurance policy. This appeal is from a grant of summary judgment to Grinnell. We affirm.

## FACTS

The facts are not in dispute. The accident in this case occurred in October 1983 when Hanson was hunting in Wyoming with friends. The party had driven to Wyoming in Hanson's pickup truck, which carried an attached eight-foot camper.

On October 15, Hanson pulled off the road and set up camp by leveling the camper off with jacks. When the camper was leveled off, the truck could not be driven. The party remained in the same location until the morning of October 17, when Hanson drove one of his hunting companions to

Casper, Wyoming and dropped him off. By afternoon, the party found a new campsite and again leveled off the camper.

After hunting that day, the party placed their guns on the front seat of Hanson's truck. When not hunting, it was customary for them to leave their guns on the seat. Hanson noted that the guns were placed inside the camper when he was driving and that he never drove the truck with the guns on the seat.

On the morning of October 18, Hanson noticed the lights in the camper were dim. He decided to recharge the camper battery by starting the truck and running the alternator.[1] As he got in to start the truck, his gun discharged for no discernible reason. Hanson believes he may have moved the gun so that he could sit down. He admitted, however, that there was nothing about the truck itself that caused the gun to discharge. Hanson received gunshot wounds, missed 18 months of work, and claims he sustains continuing wage loss.

At the time the accident occurred, Hanson had no intention of moving the truck. He further stated the party would probably have remained at that site for two or three more days before moving the truck.

## ISSUE

Did the trial court err in concluding Hanson's injuries did not arise out of the use or maintenance of a motor vehicle?

## ANALYSIS

The issue of whether an accident arises out of the use or maintenance of a motor vehicle is a legal one, and "each case presenting such a question must, to a great degree, turn on the particular facts presented." *Continental Western Insurance Co. v. Klug,* 415 N.W.2d 876, 877–78 (Minn.1987) (quoting *Associated Independent Dealers, Inc. v. Mutual Service In-*

1. After purchasing the truck in 1981, Hanson modified its electrical system by adding a second battery to supply power solely to the camper and thus avoid running down the truck battery. Although the truck and camper had completely separate electrical systems, when the camper battery ran down, Hanson would have to start the truck and use the truck alternator to recharge the camper battery.

*surance Companies,* 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975)).

■ When addressing this issue, three factors must be satisfied in order to find coverage: 1) the vehicle must have been used or maintained for transportation purposes at the time of the accident; 2) there must be sufficient causal connection between that use or maintenance and the injury; and 3) an act of independent significance cannot break the causal link. *Klug,* 415 N.W.2d at 878.

The first factor necessitates examination of the type of maintenance or use, and serves to limit an insurance company's liability to risks closely associated with motoring. *Classified Insurance Corp. v. Vodinelich,* 368 N.W.2d 921, 923 (Minn.1985). The second factor requires that the connection or nexus between the type of use or maintenance and the injury must be "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Tlougan v. Auto–Owners Insurance Co.,* 310 N.W.2d 116, 117 (Minn.1981). It is enough if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." *Id.* (quoting *Haagenson v. National Farmers Union Property & Casualty Co.,* 277 N.W.2d 648, 652 (Minn.1979)).

■ In this case, Hanson argues that the accident arose out of the "maintenance" of his truck and camper because he was injured while attempting to maintain his camper, which was designed to carry passengers during transport. He alternatively argues that the accident arose out of the "use" of his truck as a recharger for his camper battery. Support can be found for Hanson's arguments. *See, e.g., Hedlund v. Milwaukee Mutual Insurance Co.,* 373 N.W.2d 823, 826 (Minn.Ct.App.1985) (injuries sustained by insured while attempting to jump start a tractor by connecting jumper cables to a battery from a truck arose out of the use of a motor vehicle), *pet. for rev. denied* (Minn. Oct. 24, 1985). *But compare Waldbillig v. State Farm Mutual Automobile Insurance Co.,* 321 N.W.2d 49 (Minn.1982) (coverage denied where insured, who was inspecting a backhoe which

was permanently mounted on a truck, injured his hand while attempting to start the backhoe's engine).

Even if one of Hanson's two theories is accepted, however, coverage is not established because there is an insufficient nexus between that use or maintenance and Hanson's injuries. The use or maintenance of the truck as a recharger had absolutely nothing to do with the accidental discharge of the gun. *See, e.g., Marklund v. Farm Bureau Mutual Insurance Co.,* 400 N.W.2d 337, 340–41 (Minn.1987) (injuries sustained when insured slipped and fell on a gas station's concrete apron after filling and capping his car's gas tank had no nexus with the "maintenance" of his vehicle because injuries could have happened anywhere that there existed a premises hazard and presence of car was only incidentally related to the injuries); *Tlougan,* 310 N.W.2d at 117 (insufficient causal connection existed between use of vehicle by child as a passenger and injuries sustained by child playing with matches, particularly where matches could not be considered part of truck's equipment nor something involving vehicle when used for transportation purposes).

Hanson also appears to argue that the accident arose out of the "use" of his truck as a safe storage place for guns. The Minnesota Supreme Court has suggested that a covered "use" might exist where a vehicle is being used to transport or store guns during a hunting trip. *See National Family Insurance Co. v. Boyer,* 269 N.W.2d 10, 13 (Minn.1978). However, when being used to store guns, Hanson's truck was not used for transportation purposes. Hanson testified that he never drove the truck with the guns in the cab and that he only used the cab as a storage place while the party was camped. Moreover, the truck could not be moved at the time of the accident because the camper was jacked up and leveled off.

While this is not exactly a "gun rest" case (a case in which the top of the vehicle is being used to steady a gun while shooting at a target), the "gun rest" theory has been applied analogously. *See Engelding-*

er v. State Automobile & Casualty Underwriters, 306 Minn. 202, 208, 236 N.W.2d 596, 600 (1975) (where intoxicated person, who had been carried to a parked car, froze to death during the night, the court reasoned that "[a]pplying [the gun rest] theory to the facts before us, certainly the use of the automobile as an overnight resting place for the decedent is not the use of it as a vehicle"). Under such a theory, Hanson's use of his truck as a convenient place to store guns may not constitute the use of it as a vehicle because the guns could have easily been stored elsewhere, with injuries resulting from the same causes.

Again, even if we agree that the truck was being used for transportation purposes when used as a storage place for guns, there is still no nexus between that use and Hanson's injuries. See Associated Independent Dealers, 304 Minn. at 182, 229 N.W.2d at 519 ("relationship between use of van [as convenient storage place for oxygen tanks] and the ignition of the fire was casual at best, and in our view that link was not sufficient to bring the fire within the coverage afforded by defendant's policy") (emphasis in original). Moreover, Hanson acknowledged that there was nothing about the truck that caused the gun to go off and that he did not know of anything on the seat or in the truck which could have bumped the gun and caused it to discharge. See Boyer, 269 N.W.2d at 15 (where one passenger accidentally shot another and "[t]he theory that the hammer of the gun caught on the inside of the roof is pure speculation," no relationship existed between the use of the gun at that time and the use of the automobile for transportation purposes).

### DECISION

The trial court's grant of summary judgment to Grinnell is affirmed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

Where the operator is injured after beginning to enter the vehicle in the course of reaching to start it, the vehicle is "something more" than the mere situs of his injury; the injuries are a reasonable consequence of using the vehicle. Tlougan v. Auto-Owners Insurance Co., 310 N.W.2d 116, 117 (Minn.1981). There is a sufficient nexus here between the operator's gunshot injuries and his effort to use the vehicle.

Appellant engaged in the use or maintenance of his vehicle for transportation purposes. This is undoubtedly true because he was engaged in recharging a battery which was part of the same unit. See Hedlund v. Milwaukee Mutual Insurance Co., 373 N.W.2d 823, 826 (Minn.Ct.App. 1985), pet. for rev. denied (Minn. Oct. 24, 1985) (injuries during attempt to jump start tractor). It is particularly significant that the maintenance related to an integrated camper unit which was designed for transportation of passengers.

I respectfully dissent.