**NORWEST BANK MINNESOTA, N.A., as personal representative of the Estates of Lisle Vickerman and Jean M. Vickerman, and Jessa Vickerman, Petitioners, Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

No. C4–97–2293.

Supreme Court of Minnesota.

Feb. 11, 1999.

---

**6.** *Id.*

**7.** 582 N.W.2d at 261.

**8.** 538 N.W.2d at 907.

**9.** 418 N.W.2d 721, 722–23 (Minn.1988).

Snelling, Christensen & Laue, P.A., Ronald L. Snelling, Jill N. Moeller, Minneapolis, for appellants.

Meagher & Geer, P.L.L.P., William M. Hart, Richard L. Pemberton, Jr., R. Gregory Stephens, Minneapolis, for respondents.

## OPINION

GILBERT, J.

This case requires us to decide whether a motor vehicle was being used for transportation purposes when its engine was accidentally left running in a garage attached to a home and the owners of the vehicle and the home died from carbon monoxide poisoning. State Farm Mutual Automobile Insurance Company (State Farm) denied coverage under the owners' automobile insurance policy.

Because we hold that the failure to turn off the engine after parking the vehicle in an attached garage was an accident which resulted in injuries arising out of the use of the vehicle for transportation purposes, we reverse the court of appeals and order that the trial court's judgment in favor of the appellants be reinstated.

The material facts of this case are not in dispute. On the evening of April 16, 1996, Lisle and Jean Vickerman, husband and wife, and their adult daughter Leah returned to the Vickermans' home after having dinner with friends. Lisle, who was driving, pulled his wife's Infiniti Q-45 into the garage attached to the Vickermans' house. Upon parking, Lisle failed to turn off the car's engine. Both parties agree that Lisle's failure to turn of the engine was an accident. Leah and her parents then went into the house without realizing that the Infiniti was still running. When Leah left the house approximately 1 hour 35 minutes later her parents were still alive. The next morning, Leah and her sister went to their parents' house and found the Vickermans dead in the master bedroom. A coroner later determined that the cause of the Vickermans' death was carbon monoxide poisoning. Neither party disputes that the source of the carbon monoxide was the Infiniti's exhaust.

Norwest Bank Minnesota, the personal representative of the Vickermans' estates and the Vickermans' youngest daughter, Jessa Vickerman, (collectively Norwest), filed a no-fault action against the Vickermans' automobile insurer, State Farm. Norwest then moved for summary judgment, arguing that it was entitled to no-fault benefits as a matter of law because the undisputed facts showed that the Vickermans' deaths arose out of the use of a motor vehicle as required by the Minnesota No–Fault Automobile Insurance Act (No–Fault Act), Minn.Stat. §§ 65B.41–65B.71 (1998). In response, State Farm argued that, because at the time of their deaths the Vickermans were no longer actively using the Infiniti, their deaths did not arise out of the use of a motor vehicle and therefore the No–Fault Act did not apply.

The trial court granted Norwest's motion for summary judgment, holding that the Infiniti was being used for transportation purposes. The court reasoned that because the Infiniti "had been driven earlier that evening and had mistakenly never been turned off" after it was parked in the Vickermans' garage, "the transportation purpose of the vehicle did not cease. No occurrence broke the chain of causation and the vehicle alone, left running, after being driven hours earlier, was the cause of the injury." The trial court went on to state that:

> [T]he fact that the decedents in the present case had reached their final destination does not change the fact that their injuries arose out of the use of a motor vehicle. Although the deaths in this case occurred inside the home rather than the vehicle, they were caused by a continuous, unbroken chain of events directly attributable to their State Farm insured car which was being used for transportation purposes. Therefore, the no-fault act applies * * *.

The court of appeals reversed the trial court, reasoning that:

> Once the decedents had parked their car and gone to bed for the night, they had ceased to use the car for transportation purposes. Although there was an unbroken causal link between the vehicle and the deaths, the vehicle was not being used for transportation purposes at the time of deaths. The district court erred in holding otherwise.

Norwest asks us to reverse the court of appeals holding that the deaths did not "arise out of the use of a motor vehicle" and to hold instead that the Vickermans' estates are entitled to benefits under the No–Fault Act.

On appeal from an order for summary judgment, we must determine whether there is any issue of material fact and whether the lower court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Here, the material facts are not in dispute and the sole issue is the purely legal question of whether the Vickermans' deaths arose out of the use of a motor vehicle within the meaning of the No–Fault Act. We review such questions of law de novo. *See North River Ins. Co. v.*

*Dairyland Ins. Co.,* 346 N.W.2d 109, 113 n. 2 (Minn.1984).

Under the No–Fault Act, an insured party is entitled to "basic economic loss benefits * * * for all loss suffered though injury arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (1998). The Act defines maintenance or use of a motor vehicle as "maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it." Minn.Stat. § 65B.43, subd. 3 (1998).

We have held that the question of whether an injury arises out of the use of a motor vehicle "is a recurring question which defies a simple test." *See Continental W. Ins. Co. v. Klug,* 415 N.W.2d 876, 877 (Minn.1987). "Instead, 'each case presenting such a question must, to a great degree, turn on the particular facts presented.'" *Id.* at 877–78 (quoting *Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.,* 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975)). In *Klug,* we recognized three "general factors to consider when addressing the issue":

■ The first consideration is the extent of causation between the automobile and the injury. * * * [T]he vehicle must be an "active accessory" in causing the injury. This causation standard was clarified to be "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury."

\* \* \* \*

■ If a court finds a requisite degree of causation, it should next determine whether an act of independent significance occurred, breaking the causal link between "use" of the vehicle and the injuries inflicted.

\* \* \* \*

■ If a court finds a requisite degree of causation and no intervening independent act, it must consider one final inquiry. Though there may be a causal link between use of the car and the injury, the

court must determine what type of "use" of the automobile was involved. * * * [C]overage should exist only for injuries resulting from use of an automobile for transportation purposes.

*Id.* at 878 (internal citations omitted). Consideration of this third factor is intended to insure that coverage is limited to "risk associated 'with motoring.'" *Classified Ins. Corp. v. Vodinelich,* 368 N.W.2d 921, 923 (Minn.1985) (citation omitted).

■ In the present case, neither party disputes the existence of the first two factors, i.e., that there was direct causation between the automobile and the injury and that no act of independent significance occurred breaking the causal link between the "use" of the vehicle and the injuries inflicted.

■ The court of appeals addressed the third factor by looking solely to the timing of the Vickermans' ultimate injury, i.e., their deaths. The court of appeals concluded that "[s]ince, at the time of their tragic deaths, decedents were not using the car for transportation purposes, they cannot satisfy the third of the three factors and are not entitled to insurance coverage." Although hours may have passed between the Vickermans' use of the Infiniti to drive home from the restaurant and their deaths,[1] neither our cases nor the No–Fault Act support a conclusion that use of a motor vehicle for transportation purposes must be contemporaneous with the ultimate injury suffered by the insured.

State Farm relies on cases in which we denied no-fault coverage because the motor vehicle in question was not being used for transportation purposes at the time of the accident. *See Marklund v. Farm Bureau Mut. Ins. Co.,* 400 N.W.2d 337, 340 (Minn. 1987) (citing the fact that the insured's acts of maintenance were complete by the time he slipped and fell as one factor weighing against his recovery of no-fault benefits); *see also Waldbillig v. State Farm Mut. Auto. Ins. Co.,* 321 N.W.2d 49 (Minn.1982). However, in each of these cases, our focus was on the timing of the *accident*—the unexpected or unintended event that caused the injuries.

---

**1.** The record does not state precisely what time    the Vickermans died.

*See Marklund,* 400 N.W.2d at 339–40; *Waldbillig,* 321 N.W.2d at 51. It does not follow from these cases that the timing of the ultimate *injury* must also be contemporaneous with the use of the motor vehicle for transportation purposes.

 The No–Fault Act expressly provides for benefits for "injuries *arising out of* the maintenance or use of a motor vehicle" as a motor vehicle. Minn.Stat. § 65B.44, subd. 1 (emphasis added). "Arising out of" does not require that the two acts occur contemporaneously, but instead means that one act "originat[es] from" or "grow[s] out of" the other. *Associated Indep. Dealers, Inc.,* 304 Minn. at 182, 229 N.W.2d at 518. Consistent with this interpretation, we have stated that "[no-fault] coverage will exist only for injuries *resulting from* uses for transportation purposes." *Vodinelich,* 368 N.W.2d at 923 (emphasis added). Thus, in this case, the critical question is not whether the Vickermans' injuries occurred *while* the Infiniti was being used for transportation purposes, but rather whether, on these facts, the Vickermans' injuries *arose out of* the use of the Infiniti for transportation purposes.

Both parties agree that the cause of the Vickermans' deaths was Lisle's failure to turn off the engine. At oral argument, State Farm admitted that Lisle's failure to turn off the engine under these facts was an accident under the policy in issue. The Vickermans' deaths resulted from that accident. Lisle's failure to turn off the engine began a continuous, uninterrupted process of emitting carbon monoxide into the Vickermans' home—a process that slowly, but inevitably, resulted in the Vickermans' deaths. Under these facts, the Vickermans' deaths arose out of Lisle's failure to turn off the Infiniti's engine. The only remaining question is whether that accident involved a use of the Infiniti for transportation purposes.

 In this case, there is no dispute that Lisle started and drove the Infiniti for transportation purposes, i.e., to travel from the restaurant to his home. The Vickermans' injuries resulted directly from Lisle's failure to turn the engine off upon arriving home. Moreover, the accident occurred while Lisle still occupied the Infiniti. There is nothing in the record to suggest any non-transportation purpose underlying any of Lisle's actions; he simply forgot to turn off the engine. *Compare Vodinelich,* 368 N.W.2d at 923 (holding that there was no coverage where the decedent left the vehicle running for the purpose of committing suicide). Accordingly, we hold that, under the particular facts of this case, the accident that caused the Vickermans' injuries occurred while the Infiniti was being used for transportation purposes and therefore the injuries arose out of the use of a motor vehicle within the meaning of the No–Fault Act.

Reversed and remanded to the trial court for the reentry of judgment in favor of appellants.

STRINGER, J., took no part in the consideration or decision of this case.