Jeanne Marie ALEXIS, individually and as the mother and natural guardian of Jameson Alexis, Guetchina Alexis, Joshua Alexis, Joelwonson Alexis, Joemian Alexis, and Guetdina Alexis, minors, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

No. A04–1562.

Court of Appeals of Minnesota.

May 17, 2005.

**110**

Sharon L. Van Dyck, Candace L. Dale, Schwebel, Goetz & Sieben, P.A., Minneapolis, MN, for appellant.

William M. Hart, Melissa Dosick Riethof, Meagher & Geer, P.L.L.P., Minneapolis, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; SCHUMACHER, Judge; and HALBROOKS, Judge.

## OPINION

HUDSON, Judge.

Decedent Joseph Alexis and his wife's cousin, Henriquez Saintias, were found dead in decedent's Chevrolet Suburban, which was parked in the garage attached to decedent's house. It was later determined that both men died of carbon monoxide poisoning caused by exhaust from the Suburban. Other members of decedent's family, who were in the house at the time, were treated for carbon monoxide poisoning. Decedent's survivors sought benefits under their no-fault automobile insurance policy. After a bench trial on stipulated facts, the district court ruled that the death and injuries did not arise out of the maintenance or use of a motor vehicle within the meaning of the No-Fault Automobile Insurance Act; therefore, decedent's survivors were not entitled to benefits. We affirm.

## FACTS

At approximately 8:00 a.m. on September 29, 2001, appellant Jeanne Marie Alexis called 911 to report that her 8-year-old daughter was having trouble breathing. When the fire department and paramedics arrived, they asked appellant if she had a way to get to the hospital and if there was someone who could watch the other children in the house. Appellant responded that her husband was sleeping in the garage. When firefighters entered the garage, they found decedent and appellant's cousin, Saintias, unconscious in the family's 1993 Chevrolet Suburban. Both men later died. The subsequent police investigation concluded that they died of carbon monoxide poisoning caused by exhaust from the Suburban.

On February 26, 2003, appellant filed suit against respondent State Farm Mutual Automobile Insurance Company, seeking economic-loss benefits and funeral expenses under the decedent's no-fault automobile insurance policy. Respondent asserted that the injuries to the decedent and his family did not arise out of the maintenance or use of a motor vehicle and, thus, coverage was denied. On May 26, 2004, the parties waived their right to a jury trial on the issue of coverage and stipulated that the first two prongs of the three-factor test set forth in *Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876 (Minn.1987) had been met.[1] The third prong of the *Klug*

---

1. Thus, neither party disputes that there was a direct causation between the automobile and the injury, and that no act of independent significance occurred breaking the causal link between the "use" of the vehicle and the

test—whether the vehicle was being used for transportation purposes at the time of the injury—was disputed. The parties, however, agreed to submit stipulated facts on which the district court was to rely in determining whether the third prong of the *Klug* test was satisfied.

Specifically, the parties stipulated to the following relevant facts:

- Decedent's family owned three cars: (1) a 1993 Chevrolet Suburban, (2) a 1998 Dodge Caravan, and (3) a 1989 Honda Accord. All three vehicles were insured by respondent.
- Decedent was employed by Carlson Floor Care and worked the night shift from 11:00 p.m. to 7:30 a.m.
- According to decedent's supervisor, decedent "was always at work and always on time."
- Appellant stated that "[o]n occasion when [decedent] returned home from working the night shift, he would rest in the car for a short time to avoid the morning noise of the children," but he "had never slept overnight in the garage."
- Saintias returned from work at approximately 3:00 p.m. on September 28, and he worked within walking distance of the family home.
- On September 28, 2001, after returning from work, decedent went fishing from approximately 8:30 a.m. until 8:30 p.m. Decedent drove the Honda Accord on his fishing trip.
- After the decedent returned home from fishing around 8:30 p.m., he and Saintias went into the garage.
- Appellant last saw decedent around 9:00 p.m. in the garage when she asked him if he wanted any food—he did not. Appellant last saw Saintias in the living room.

- Appellant put the children to bed around 9:30 p.m. and then fell asleep.
- The decedent did not show up for work by 11:00 p.m. on September 28, 2001.
- At approximately 8:00 a.m. on September 29, 2001, appellant called 911 to report that her 8–year–old daughter was having trouble breathing.
- When the fire department and paramedics arrived, they asked appellant if she had a way to get to the hospital and if there was someone who could watch the other children in the house. Appellant responded that her husband was sleeping in the garage.
- Firefighters found the decedent "lying down on the floor of the rear passenger area" of the Suburban, and found Saintias "lying down in the rear area of the truck."
- The garage door was closed, the doors of the Suburban were locked, and the key was in the ignition in the "on" position, but the engine was not running and the gas tank was full.
- The decedent and Saintias died from carbon monoxide poisoning. Toxicology reports indicate that neither man had ingested alcohol or controlled substances.
- Precision Tune performed an emissions test on the Suburban and determined that the Suburban generated higher-than-normal levels of carbon monoxide in the first 20 minutes of operation.
- Excel Energy found no problems with the gas lines or appliances in the home.
- The police investigation concluded that the Suburban was the source of the carbon monoxide poisoning, the deaths

injuries inflicted. *See Klug,* 415 N.W.2d at 878.

were accidental, and there was no evidence to support an attempted suicide on the part of either man.

Based on these facts, the district court found that the decedent's death "was caused by carbon monoxide, which came from the Suburban," and that "[t]here is a direct causal connection between the Suburban and his death." The court found that the "causal link between the Suburban and [decedent's] death is unbroken by any other fact or event." But, in conclusion, the district court held that the "Suburban was not being used for transportation purposes" at the time of the injuries; therefore, the injuries "did not arise out of the maintenance or use of a motor vehicle within the meaning of the Minnesota No-Fault Act," and appellant was not eligible to receive no-fault benefits. This appeal follows.

## ISSUE

Was decedent's death caused by an accident arising out of the use of his automobile for transportation purposes?

## ANALYSIS

Under Minnesota's No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41— 65B.71 (2004) (no-fault act), an insured may recover basic economic-loss benefits for injuries "arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1(a) (2004). A predominant goal of the no-fault act "is to allocate the costs of injuries causally resulting from motoring activities to the automobile insurance system." *Benike v. Dairyland Ins. Co.*, 520 N.W.2d 465, 466 (Minn.App.1994), *review granted* (Minn. Oct. 14, 1994), *and appeal dismissed* (Minn. Apr. 5, 1995). Under the no-fault act, the phrase " '[m]aintenance or use of a motor vehicle' means maintenance or *use of a motor vehicle as a vehicle,* including, incident to its

maintenance or use as a vehicle, occupying, entering into, and alighting from it." Minn.Stat. § 65B.43, subd. 3 (2004) (emphasis added).

## 1. Standard of review

■ As previously stated, the parties stipulated that the first two prongs of the test in *Cont'l Western Ins. Co. v. Klug,* 415 N.W.2d 876 (Minn.1987) were satisfied. Therefore, the only issue before the district court was whether, under the third prong of the *Klug* test, decedent's Suburban was being used for "transportation purposes" at the time of the accident. We must first resolve the parties' dispute regarding the appropriate standard of review on appeal. Appellant argues that because the district court's ultimate determination that the automobile was not being used for transportation purposes is a matter of statutory interpretation under the no-fault act, the appropriate standard of review is de novo. Respondent argues that the district court's finding that the "Suburban was not being used for transportation purposes" is a factual finding and, thus, it should be reviewed under a deferential, clearly-erroneous standard. Whether "an injury arises out of the use or maintenance of a motor vehicle is a question of law." *Kemmerer v. State Farm Ins. Cos.,* 513 N.W.2d 838, 842 (Minn.App.1994), *review denied* (Minn. June 2, 1994); *see also Klug,* 415 N.W.2d at 877–78 (stating that the determination of whether an accident arose out of the maintenance or use of a motor vehicle is a legal issue that turns on the particular facts presented in each case). And it is well settled that appellate courts need not defer to the district court's conclusions when reviewing questions of law. *Frost– Benco Elec. Ass'n. v. Minn. Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Accordingly, we find that de novo review

of the district court's decision is appropriate here.

## 2. Burden of proof

■ A second threshold issue here is which party must bear the burden of proof on the "transportation purposes" question. The supreme court shed light on this question in *McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 480 (Minn.1992), when it stated, "[t]o be eligible for no-fault benefits [the insured] must also, of course, meet the use requirement established in *Klug* by proving that her injury resulted from an accident arising out of the use of a motor vehicle." Although this statement could be characterized as dicta, this court has held—in reliance on the language of *McIntosh*—that "the party claiming no-fault benefits bears the burden of proving by a preponderance of the evidence that there was an accident and that the accident arose out of the operation, use or maintenance of a motor vehicle." *LaValley v. Nat'l Family Ins. Corp.*, 517 N.W.2d 602, 604 (Minn.App.1994), *review denied* (Minn. Aug. 24, 1994). Accordingly, we find that the burden of proving, by a preponderance of the evidence, that the injuries arose out of the use of a motor vehicle for transportation purposes lies with appellant as the insured party.

## 3. Was decedent using the automobile for transportation purposes?

■ In *Klug*, the supreme court formulated a three-factor test to assist in determining whether an injury arose out of the maintenance or use of a motor vehicle under the no-fault act. First, courts must consider the extent of the causation between the vehicle and the injury. *Klug*, 415 N.W.2d at 878. Second, if causation is present, courts consider whether an act of independent significance broke the causal chain. *Id.* And third, if no intervening act breaks the causal chain, courts must determine whether the vehicle was being used for transportation purposes at the time of the injury. *Id.* Here, we must determine whether, under the third prong of the *Klug* test, decedent's injuries arose out of the use of a motor vehicle for "transportation purposes." It is well settled that the purpose of the "use" inquiry is to limit the liability of no-fault insurers to risks associated with motoring. *See Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921, 923 (Minn.1985); *cf. Klug*, 415 N.W.2d at 878 ("Though there may be a causal link between use of the car and the injury, the court must determine what type of 'use' of the automobile was involved.").

Minnesota precedent instructs that a claimant does not satisfy her burden of proof by merely demonstrating that the injured party's use was reasonably consistent with the inherent nature of a vehicle. *Vodinelich*, 368 N.W.2d at 923. In *Vodinelich*, a woman committed suicide by idling her car engine while parked in the family's attached garage. *Id.* at 922. In doing so, she accidentally caused the deaths of her two children in the house. *Id.* The supreme court concluded that the children's deaths did not arise out of the use of a motor vehicle for transportation purposes, reasoning that it is not sufficient to show that the vehicle's engine was on. *Id.* at 923. Rather, a claimant must show that the injured party's use was consistent with "motoring." *Id.*

Here, applying the reasoning in *Vodinelich*, appellant has not demonstrated by a preponderance of the evidence that the decedent's use of the vehicle was consistent with motoring. Decedent and Saintias were found lying down in the back area of the truck, rather than in the front seat where one would expect a person to be if they were planning on driving. Moreover, even though decedent did not have to be at

work until 11:00 p.m., he went into the garage around 8:30 p.m., and appellant saw decedent in the garage at 9:00 p.m. These facts suggest that travel was not imminent. In addition, Saintias' presence in the truck between 9:00 p.m. and the time of the accident, when combined with the fact that Saintias did not have to work until the next morning, further indicates that the decedent was not preparing to leave for work when he turned on the car. Finally, although the key was in the ignition and in the "on" position, no facts suggest, and appellant does not claim, that decedent had returned from a recent trip. Taken together, these facts suggest that decedent turned on the ignition to warm the car and/or listen to the radio while he rested in the back seat. The facts do not suggest that the decedent was using the car for transportation purposes at the time of his death and, therefore, his survivors are not eligible to receive no-fault benefits.

But appellant relies on *Norwest Bank Minn., N.A. v. State Farm Mut. Auto. Ins. Co.,* 588 N.W.2d 743 (Minn.1999), to support her contention that decedent was using the car for transportation purposes at the time of the accident.[2] Appellant's reliance is misplaced. In *Norwest Bank,* homeowners accidentally left their car running in an attached garage after a night out dining and later died during the night from carbon monoxide poisoning. 588 N.W.2d at 745. The supreme court held that the accident that caused the homeowners' injuries occurred while the vehicle was being used for transportation purposes. *Id.* at 747. The supreme court reasoned that the homeowners started and drove their vehicle for transportation purposes—to travel from the restaurant to their home—and "neither our cases nor

the No–Fault Act support a conclusion that use of a motor vehicle for transportation purposes must be contemporaneous with the ultimate injury suffered by the insured." *Id.* at 746–47. "[T]he critical question is not whether the [homeowners'] injuries occurred *while* [their automobile] was being used for transportation purposes, but rather whether, on these facts, the [homeowners'] injuries *arose out of* the use of [their automobile] for transportation purposes." *Id.* at 747.

Accordingly, although the supreme court in *Norwest Bank* held that the use of a motor vehicle for transportation purposes need not be contemporaneous with the ultimate injury, it did not excuse insureds from also establishing that the injury resulted from the use of the automobile as an automobile, i.e., for a transportation purpose. On the particular facts of this case, appellant did not meet her burden.

While no one will ever know with any certainty what the decedent and Saintias were doing at the time of their deaths or why they decided to turn on the automobile in a closed garage, we hold that on these particular facts and under the current state of Minnesota law, decedent was not using the automobile for transportation purposes. We recognize that this decision compounds the tragedy that has befallen the Alexis family; we nonetheless feel constrained to affirm the district court's decision.

## DECISION

Because decedent was not using the vehicle for "transportation purposes" at the time of the accident, his death did not arise out of the use of a motor vehicle within the

2. Appellant also relies on the supreme court's decision in *Tlougan v. Auto–Owners Ins. Co.,* 310 N.W.2d 116 (Minn.1981). But the insurer in *Tlougan* did not dispute that a transportation purpose was pending at the time of the accident. *Id.* at 117.

meaning of the No–Fault Automobile Insurance Act. Accordingly, we affirm.

**Affirmed.**

ROBERT H. SCHUMACHER, Judge (concurring specially).

I concur with the majority's decision. The facts of this case lead to the inference that, at the time of the accident, the decedent was not using his automobile for "transportation purposes" as that phrase has come to be defined by Minnesota courts. But I feel compelled to point out the incongruence of this decision with the primary purpose of Minnesota's No–Fault Automobile Insurance Act. The supreme court aptly defined the purpose of no-fault insurance as follows:

> Insurance for economic loss benefits is purchased to protect the insured against risk of injury arising from the maintenance or use of a motor vehicle regardless of whether the tortfeasor was negligent or acted intentionally, or even if there were no tortfeasor. It is enough if the victim accidentally injures herself. In other words, the focus is not on the tortfeasor; rather, no-fault benefit eligibility is dependent exclusively on the injured victim and whether she has been hurt under circumstances arising from the use of a motor vehicle. This is true first party coverage.

*McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 480 (Minn.1992).

Here, it is undisputed that the decedent died as a result of an accident caused directly by his use of a motor vehicle. And the decedent had no-fault insurance. No-fault insurance exists to cover just such a case. Where it is undisputed that an accident has occurred as a result of the operation of a motor vehicle, it should follow that an insured with no-fault insurance should be compensated for the damage caused by the accident. Thus, I fear that

the "transportation purposes" test now operates to exclude a class of accidents and victims that the Minnesota Legislature never intended to exclude when it passed the no-fault act.